IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

NILDA PAGAN-MORALES
Plaintiff

vs

MICHAEL J. ASTRUE, Commissioner of Social Security
Defendant

CIVIL 11-1958CCC

**MEMORANDUM OPINION AND ORDER**

Plaintiff Nilda Pagán-Morales filed a complaint on September 29, **2011** pursuant to 42 U.S.C. § 405(g) requesting judicial review of a July 29, **2011** final decision of the Commissioner of Social Security denying her disability benefits after a hearing.  However, the certified transcript of the record of the administrative proceedings was filed in the Clerk's Office of this Court on June 27, **2014** (D.E. 22).  We commence with the description of claimant Pagán-Morales' vocational profile provided by the vocational expert during the hearing held on October 22, 2009, upon request of the Administrative Law Judge ("ALJ").

Q – Can you describe the claimant's vocational profile?

A – The claimant, Nilda Pagan-Morales, is young, 42 years old. In 2002, she was 32 years old [INAUDIBLE].  She finished high school diploma via examination.  She resides in Cayey. Her last occupation was in a cigar factory as a Cigar Wrapper/Tender, classified as job code 529.685-286.  This is a non-skilled occupation with a SVP of two.  It is light duty and can be performed sitting for prolonged periods of time. It is part of the manufacturing line and requires the use of the musculoskeletal system, the ability to perform fine and gross motor skills with the hands, in order to manipulate objects, grab, push, pull and carry up to approximately ten pounds frequently.  This occupational also requires good concentration, memory, attention, the ability to follow instructions, good judgment and emotional stability to follow

CIVIL 11-1958CCC                2

>       instructions, good supervisors and interact with co-workers.
>       This describes her vocational profile.

(Tr., pp. 40-41).

Claimant last met the insured status requirements of the Social Security Act on December 31, 2007. Her alleged disability onset date is December 31, 2002. Claimant's application for a period of disability and disability benefits was filed on March 13, 2006. The findings of fact of the ALJ in support of his decision that claimant was not under a disability, as defined in the Social Security Act, at any time from the alleged onset date of December 31, 2002 through December 31, 2007, day last insured, are the following:

- Claimant's muskuloskeletal and mental conditions were found to be severe, as defined in the regulations. However, the ALJ found that her history of bronchial asthma was not a severe medical condition.

- Regarding her physical impairments of bilateral leg pain and shoulder spasms, reference was made at page 18 of the transcript to Dr. Ana H. Martínez, a consultant internal medicine specialist who evaluated claimant on June 22, 2006 and reported "an essentially normal physical examination," with no neurological deficit, normal gait and posture, no gross motor deficit except for decreased rate of motion of the neck, shoulders and back with a positive Straight Leg Raising Test at 70 degrees, soft tissue swelling revealed by shoulders X-ray, osteoarthritis and discal disease at L5-S1 level as reflected by the lumbosacral spine X-ray. As to mental impairments, reference was made to certain findings reported by Dr. Luis C. Rojas, claimant's treating phychiatrist since

CIVIL 11-1958CCC                3

>
> March 11, 2002, such as that she had friendly behavior, appropriate appearance and adequate motor activity (Exhibit 2F); that she was alert, logical, coherent and relevant and although her attention and concentration were diminished she was able to perform some of the tests (Exhibits 2F and 7F) (Tr., p. 17), and that claimant had experienced no episodes of decompensation of extended duration.

The ALJ observed (Tr., p. 16) that to meet the criteria of the listings concerning mental impairment, the same must result in at least two of the following: "marked restriction of activities of daily living; marked difficulties in maintaining social functioning; marked difficulties in maintaining concentration, persistence, or pace; **or** repeated episodes of decompensation, each of extended duration."  He noted that "[a] marked limitation means more than moderate but less than extreme" and that "[r]epeated episodes of decompensation, each of extended duration, means three episodes within 1 year, or an average of once every 4 months, each lasting for at least 2 weeks."  He then classified claimant as having "moderate restriction" of activities of daily living based on Dr. Ana H. Martínez' June 22, 2006 evaluation during which "claimant reported that she spends most of the day resting or watching television (Exhibit 11F)" and on claimant's Function Report of March 20, 2008 where she indicated that, in an average day, she takes care of her personal needs and watches television (Exhibit 10E).  (Tr., p. 16).

Further reference to Dr. Rojas regarding claimant's mental impairment claim is found at page 18 of the Court transcript, quoted below:

> The claimant also alleged a depressive disorder, for which she received psychiatric treatment with Dr. Luis C. Rojas from March 11, 2002, through March 17, 2008.  He initially and finally

CIVIL 11-1958CCC                             4

>   diagnosed a moderate major depression, manifested by anxiety, restlessness, nervousness, irritability, forgetfulness and appetite and sleep disturbance.  However, he always found her with appropriate appearance, adequate motor activity, friendly behavior, logical, coherent and relevant thought process and full orientation to person, place and time.  There were no suicidal or homicidal ideas, delusions, nor psychosis. In Dr. Rojas' medical opinion, the claimant would be able to handle her own funds (Exhibits 2F, 7F and 17F).

The ALJ also made the following determination at page 19 of the transcript:

>   The analysis of the mental evidence discloses that the claimant did not have significant intellectual or personality deterioration and her effective intelligence was within normal limits.  Also, there was no perceptual disturbance, delusions, or homicidal ideation.  The claimant gave an adequate, detailed description of her symptomatology and work history at the disability interviews, as well as at the hearing.  Based on these findings, the undersigned finds that the claimant had a moderate mental condition that allowed her to perform unskilled work.

The ALJ determined that the claimant was unable to perform her past relevant work as a cigar wrapper, a job that required her to perform work activities at a light level of exertion that were beyond her residual functional capacity.  The vocational expert answered different hypothetical questions, each of which contained some of the components related to claimant's vocational and educational profile, functional limitations for a non-skilled occupation, physical or emotional conditions and adjustment to other occupations.  The vocational expert gave answers to each of the several hypothetical questions posed. Regarding the last hypothetical question raised by the ALJ to the vocational expert at pages 45-46 of the transcript, which took into account both physical pain and emotional disorders, the vocational expert opined that "she could not stably perform any occupation in the economy."  The reasons stated by him in support of that opinion will be later discussed.  The ALJ adopted the narrower hypothesis presented by him to the vocational expert

CIVIL 11-1958CCC                              5

at the administrative hearing regarding vocational adjustment to other occupations that exist in Puerto Rico and the local economy of Cayey as to which the expert observed that there are sedentary, non-skilled occupations, such as, telephone clerk, addresser (placing address labels on envelopes), and document preparer.  This particular hypothetical question regarding other occupations posed by the ALJ did not contain any reference to a mental condition.  Said hypothetical was phrased as follows:

> Q -- Could a person with the same vocational and educational profile, age, having reached the age of 40 years as of December 31, 2007, and with the same functional limitations for a non-skilled, sedentary occupation, make a vocational **adjustment to other occupations** that sufficiently exist in the economy of Puerto Rico and the local economy of Cayey as of December 31, 2007?

(Tr., p. 43) (emphasis ours).  The vocational expert's "yes" to that question contained a reference to the three sedentary occupations mentioned above. The ALJ decision, in its relevant part, reads:

> Based on the testimony of the vocational expert, the undersigned concludes that, through the date last insured, considering the claimant's age, education, work experience, and residual functional capacity, the claimant was capable of making a successful **adjustment to other work** that existed in significant numbers in the national economy.  A finding of "not disabled" is therefore appropriate . . .

(Tr., p. 20) (emphasis ours).

The last hypothesis posed by the ALJ to the vocational expert included a reference to claimant's own testimony regarding her emotional illness:

> Q – . . . If we were to give credibility to the claimant's testimony, could she make a vocational adjustment to another occupation that existed in the economy of Puerto Rico and the local economy as of December 2007?"
>
> A – In my opinion, she could not stably perform any occupation in the economy.  I heard her mention physical pain in her shoulders, back, and constant pain.  I also heard her mention emotional complaints, with severe, audible hallucinations;

CIVIL 11-1958CCC                                6

> she hears voices. In the vocational aspect, this combination of pain and interruptions of cognitive deterioration, affects the person. There would be a risk to the quality and continuity of employment because there would be interruptions due to this physical and mental deterioration . . . to the point that this person could not stably perform and efficiently produce in any job, even those that are not skilled and sedentary.

(Tr., pp. 45-46).

Claimant Nilda Pagán-Morales had previously described her conditions as follows:

> A -- I hear a lot of voices. And those voices tell me many things, like my husband is burying dead people. He goes to the farm, digs holes, and I see dead people next to him. They tell me that what he has created there is a cemetery. I do everything the voices tell me to do. I have stayed on the street begging. I drop everything. I stay awake, as if I were at the wake of a person that does not exist.
>
> Q -- Do you have any other complaint?
>
> A -- I have a lot of back and hand pain.

Tr., p. 31.

Questioned again by the ALJ regarding her emotional condition, she answered:

> A -- my emotional condition. I feel like everyone wants to harm me and I see a lot of dead people, I do not know. I see that people bury dead people, that they are in the trunk, many things, many things. I hear voices that tell me that there are dead people in the trunk. Or that my husband is burying dead people.

Tr., p. 38.

Claimant informed that she visited a psychiatrist every one or two months depending on how he finds her. Tr., pp. 32-33. As to why she stopped working, she answered:

> Because I became emotionally ill. Because of all the pain that I had and my mind too. I would get into conflict with others.

CIVIL 11-1958CCC                        7

There is medical evidence in the record that claimant was first seen by psychiatrist Luis C. Rojas-Ruiz on March 11, 2002 and treated until March 25, 2008 since she was thirty-three years old.  She was diagnosed with moderate major depressive disorder with anxiety, with a reserved prognosis.  Claimant was prescribed *Xanax* and *Elavil*.

An April 10, 2008 request for a psychiatric evaluation gives the following description of claimant's condition at the time of the referral:

> 40 Y/O W/E ALLEGES MENTAL CONDITION.
> AT INITIAL LEVEL M/E SHOWED: L/C/R.  ANXIOUS & NERVOUS.  OX3.  MEMORY ADEQUATE.  AT PRESENT W/E SHOWS WORSENING OF MENTAL CONDITION.  REPORT FROM DR. ROJAS: PSYCHOMOTOR RETARDATION.  L/C/R.  ANXIOUS, DEPRESSED.  PARTIALLY ORIENTED ON TIME.  SHORT TERM & IMMEDIATE MEMORY WERE AFFECTED.  ATTENTION & CONCENTRATION WERE DIMINISHED.  JUDGMENT & INSIGHT WERE ADEQUATE.  RESTRICTED ADL'S.  PLEASE, REVIEW AND ASSESS ON SEVERITY.

Tr., p. 375.  This request was immediately preceded by Dr. Rojas' March 25, 2008 report.  Tr., pp. 370-374.

Hugo Román-Rivera, Ph.D. evaluated claimant on April 23, 2008 and concluded that her cognitive abilities were diminished but functional.  He reported that overall medical evidence showed that claimant was able to understand and perform a two-step simple command, persist at tasks for at least two-hour intervals, interact with others and adjust to changes.  Tr., p. 393.

Regarding her physical condition, claimant was evaluated by Dr. Ana H. Martínez, rheumatologist, on June 22, 2006.  Her diagnostic impression after the physical examination, including an X-ray of both shoulders and the lumbosacral spine, was the following:

1. Lumbosacral spine osteoarthritis, discal disease L5-S1
2. Bilateral subdeltoid bursitis

CIVIL 11-1958CCC      8

  3. Cervical and lumbosacral spine muscle spasm
  4. Dextroscoliosis
  5. Rule out knee osteoarthritis
  6. Bronchial asthma by history

Tr., p. 346.

  Claimant's prognosis was reported as guarded by Dr. Martínez.

  Having considered all of the evidence which is part of the Administrative Record, particularly the medical evaluations regarding claimant's psychiatric conditions, and all of the findings of the Commissioner of Social Security, the Court concludes that the Secretary's determination that claimant was not under a disability within the meaning of the Social Security Act from December 31, 2002, onset date, to December 31, 2007, date last insured, is not supported by substantial evidence. The Administrative Law Judge determined that claimant was unable to perform her past relevant work as a cigar wrapper but that, considering her age, education, work experience and residual functional capacity, there were jobs that existed in significant numbers in the national economy that she could have performed. He specifically observes in his decision dated November 10, 2009 that in order to determine the extent to which limitations eroded the unskilled light occupational base, which was her level of work through the date last insured, he "asked the vocational expert whether jobs existed in the national economy for an individual with the claimant's age, education, work experience, and residual functional capacity . . . [and that ] the vocational expert testified that given all of these factors the individual would have been able to perform the requirements of representative occupations such as Telephone Clerk, Addresser and Document Preparer, of which there were 2,500 to 2,700 in the area in which the claimant lived and 11,000 in Puerto Rico. The Administrative Law Judge

CIVIL 11-1958CCC                              9

described these jobs as "sedentary and unskilled."  He then determined that based on the testimony of the Vocational Expert, claimant was able to make a successful adjustment to other work that existed in significant numbers in the national economy.

As discussed earlier, the Administrative Law Judge chose the answer given by the Vocational Expert to a hypothetical question that did not include claimant's mental condition as an element.  In doing this, the ALJ also chose to disregard all of the medical evidence on record regarding the claimant's long history of psychiatric treatment, particularly that of Dr. Luis C. Rojas from March 11, 2002 through March 17, 2008 for a major depressive disorder with anxiety.  He also ignored the Vocational Expert's answer to the one hypothesis presented to him during the administrative hearing which included a reference to claimant's testimony about her mental state.  The Administrative Law Judge posed the question to the Vocational Expert asking him to determine, if "we were to give credibility to claimant's testimony," whether she could make a vocational adjustment to another occupation in the local economy as of December 2007.  Her testimony, as outlined above, describes a mentally disturbed person who sees dead people, sees people bury dead people, and hears voices telling her that there are dead people in the trunk or voices that tell her that her husband is burying dead people and that she sees dead people next to him at a farm where he digs holes.  This is not a simply a matter of whether we "give credibility to claimant's testimony."  There is substantial medical evidence on record of the psychiatric treatment that plaintiff has received to treat her mental illness.

More importantly, when the Administrative Law Judge made the reference to the Vocational Expert in the last hypothesis regarding claimant's

CIVIL 11-1958CCC               10

testimony about her emotional condition, his opinion was that she could not stably perform **any** occupation in the economy. He specifically mentioned her testimony regarding "emotional complaints, with severe audible hallucinations and hearing voices." He categorically concluded that "the combination of pain [referring to her physical pain because of shoulder and back conditions] and interruptions of cognitive deterioration affect the person and there would be a risk to the quality and continuity of employment because there would be interruptions due to the physical and mental deterioration, to the point that she cannot perform and efficiently produce in any job, even those that are not skilled and sedentary." Court Transcript, pp. 45-46. When the client's attorney added to the hypothetical other limitations such as poor social and family relationships, low self esteem, poor concentration, poor ability to perform and complete tasks, and poor interaction under pressure, limitations set forth in Dr. Rojas' Report,[1] the Vocational Expert stated that she would "not be able to produce the quality and quantity of work consistently and would be out of the labor force." Court Transcript, p. 49.

Considering that the Administrative Law Judge based his determination of non-disability on an incomplete hypothetical submitted to the Vocational Expert and that he disregarded the Vocational Expert's clear opinion that she could not perform any jobs, even those unskilled and sedentary, given the combination of her mental and physical conditions, considering further that the Vocational Expert's answer on her inability to perform even unskilled came as

---

[1] As stated by claimant's attorney to the Administrative Law Judge during the evidentiary hearing, specifically referring to "the limitations in my second hypothetical question first come from exhibits 7F and 17F which are the reports from Dr. Rojas, and from exhibits 3E and 4E, which are when the claimant went to the Social Security Office and it is what employees of the Social Security saw personally in the claimant." Court Transcript, pp. 50-51.

CIVIL 11-1958CCC                             11

a response to the only question that included claimant's emotional condition, the principal component of the medical evidence in support of her disability claim, the Court finds that the Administrative Law Judge's decision is not supported by substantial evidence.  Accordingly, the decision of the Commissioner of Social Security which became his final decision when claimant's request for review of the Administrative Law Judge's decision was denied, is REVERSED in this 2011 case in which the transcript of the records of proceedings before the agency was not filed until June 27, 2014 (D.E. 22). The case is remanded to the Commissioner for the computation of benefits.

    SO ORDERED.

    At San Juan, Puerto Rico, on June 29, 2015.


                                                               S/CARMEN CONSUELO CEREZO
                                                               United States District Judge